UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAYDEN CAREY,

      **Plaintiff,**

                                **CASE NO.:**

**v.**

SURF STYLE RETAIL
MANAGEMENT, INC.,

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JAYDEN CAREY, by and through undersigned counsel, brings this action against Defendant, SURF STYLE RETAIL MANAGEMENT, INC., and in support of her claims states as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages for violations of the Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*. and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. Section 760.01 *et seq*.

2.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e *et seq*.

3.    Venue is proper in the Northern District of Florida, because all of the events giving rise to these claims occurred in Okaloosa County, Florida.

## PARTIES

4.    At all times relevant hereto, Plaintiff was a resident of Okaloosa County, Florida.

5.    Defendant is a company that operates a store in Destin, Florida, in Okaloosa County, Florida.

## GENERAL ALLEGATIONS

6.    At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of Title VII and the FCRA.

7.    At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII and the FCRA.

8.    Plaintiff has satisfied all conditions precedent, or they have been waived.

9.    Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

10.    Plaintiff requests a jury trial for all issues so triable.

2

## FACTS

### *Plaintiff is a Protected Class Due to Her Sex*

11.    Plaintiff is a female.

12.    Thus, Plaintiff is a member of a protected class, and on account of her protected status, Plaintiff benefits from the protections of Title VII and the FCRA.

### *Plaintiff was Qualified for Her Employment Position with Defendant*

13.    Plaintiff began working for Defendant as a retail employee in or around June 2024, and she worked in this capacity until she was forced to resign in or around early March 2025.

14.    Plaintiff was qualified for her position and performed the job for which she was hired in a satisfactory manner.

### *Plaintiff Suffered Adverse Employment Action*

15.    During her employment, Plaintiff was subjected to disparate treatment and sexual harassment on the basis of her sex.

16.    At all times material hereto, Plaintiff was nineteen (19) years old.

17.    In or around January 2025, Defendant hired a new employee, Patrick, a forty-five-year-old man.

18.    From the beginning of Patrick's employment, he began making unwanted sexually inappropriate comments to Plaintiff.

19. On Patrick's very first day of work, he stated that the store's former manager, who had transferred to a different store, was "fine as hell," then turned to Plaintiff and said that Plaintiff was "fine as hell too."

20. Plaintiff was shocked and deeply uncomfortable.

21. Patrick's sexual harassment of Plaintiff only continued and escalated from there.

22. Soon thereafter, one day when Plaintiff and her twenty-one-year-old female coworker, Andy, were sitting on the floor folding clothes, Patrick began to make explicit remarks to them, stating that he wanted to "whip them all around."

23. Further, Patrick stated that he wanted to "bend them over" and give them oral sex.

24. When Plaintiff then stood up, Patrick stated, "look at that ass" and made inappropriate facial expressions.

25. Plaintiff objected to this sexual harassment.

26. Further, Andy reminded Patrick that Plaintiff was only nineteen (19) years old.

27. However, Patrick continued to make sexually inappropriate comments toward Plaintiff throughout the following days.

28. By way of just one example, Patrick began to regularly tell Plaintiff that she is "beautiful" and that she could "get anyone" that she wanted.

4

29.    Plaintiff began to feel increasingly disturbed and unsafe at work.

30.    Plaintiff engaged in protected activity by objecting to this sexual harassment.

31.    Specifically, Plaintiff called one of Defendant's managers of a different store location (who was Plaintiff's former manager), Dawn, and informed her of what had been happening regarding Patrick's sexual harassment of Plaintiff.

32.    Dawn advised Plaintiff to inform Plaintiff's current store managers about Patrick's sexual harassment of Plaintiff, but otherwise failed to take any remedial action.

33.    This same day, Patrick continued to sexually harass Plaintiff by commenting about Plaintiff being in the bathroom, stating to Andy that Plaintiff "must be masturbating in there."

34.    By the time that Plaintiff learned of this comment, Plaintiff's supervisor—the store manager—had already left for the day, so Plaintiff was unable to immediately report Patrick's sexual harassment.

35.    During Plaintiff's very next shift, Plaintiff engaged in protected activity by reporting Patrick's sexual harassment of her to the female store manager, Jerica, Plaintiff's supervisor.

36.    Plaintiff described to Jerica the sexual harassment that Plaintiff had been experiencing from Patrick, including the sexual comments that Patrick had

5

made about Plaintiff, and the fact that Plaintiff had repeatedly asked Patrick to stop, but that Patrick persisted.

37. However, Defendant failed to take remedial action.

38. Although Jerica said she would "take care of it," Patrick remained on the schedule with Plaintiff and continued making sexually inappropriate comments toward Plaintiff.

39. Because Defendant failed to take remedial action, Plaintiff continued to be subjected to severe and pervasive sexual harassment from her coworker, Patrick.

40. Because the sexual harassment of Plaintiff persisted, Plaintiff, yet again, engaged in protected activity, objecting to the sexual harassment.

41. Specifically, Plaintiff reported the sexual harassment to the other manager, Raymond, Plaintiff's supervisor.

42. On behalf of Plaintiff and her coworker, Andy, Plaintiff explicitly stated to Raymond, "Patrick has been sexually harassing us."

43. Not only did Defendant entirely fail to take remedial action in response to Plaintiff's protected activity, but Raymond actually laughed at Plaintiff, mocked her, and instructed her not to discuss the situation with anyone else.

44. Despite Plaintiff's complaints, due to Defendant's complete lack of remedial action, Patrick continued to sexually harass Plaintiff.

6

45. The following week, Defendant's store managers asked Plaintiff's coworker, Andy, if she had any concerns about working at the store.

46. Andy replied, "Is this about Patrick? Because that is the only issue," and detailed Patrick's conduct toward Plaintiff and Andy.

47. Yet again, Plaintiff's supervisors were made aware of Patrick's sexual harassment of Plaintiff.

48. And, yet again, Defendant took no remedial action, allowing the sexual harassment of Plaintiff to continue, despite Defendant being well-aware of this sexual harassment.

49. Plaintiff's supervisors dismissed Andy's comments and explicitly instructed Andy not to inform Plaintiff about their conversation.

50. Shortly after the managers' conversation with Andy, Plaintiff's supervisor, Jerica, insinuated that Plaintiff and Andy must be engaging in inappropriate conversations, which led Patrick to also participate in this sort of behavior, stating to Andy: "If you and [J]ayden say stuff to each other and [P]atrick hears it, then he will think it's okay for him to say it to[o], so you guys have to start watching what you say to each other."

51. However, Plaintiff and Andy objected to this, vehemently denying ever engaging in any inappropriate conversations, and stating to Jerica that their

7

conversations could by no means influence or encourage Patrick's sexual harassment of Plaintiff.

52.    In response, again, Jerica dismissed Patrick's sexually inappropriate comments toward Plaintiff and Andy.

53.    Specifically, when Andy and Plaintiff pointed out to Jerica that Patrick was roughly twenty-five (25) years older than them, which further enhanced the severity of his sexual harassment of them, Jerica "joked" that she could not do anything about that, given that Jerica's husband was thirty (30) years younger than Jerica.

54.    Moreover, she instructed Plaintiff to "just drop it" because Spring Break season was approaching, and Defendant "needed Patrick" due to the expected influx of business.

55.    Raymond was also present for this conversation, yet still did not take any remedial action or offer any solutions. Rather, he appeared to be suppressing laughter.

56.    Weeks later, Defendant had still taken no remedial action and Patrick's sexual harassment of Plaintiff had been continuing, despite Plaintiff's numerous instances of protected activity and Defendant's knowledge of the sexual harassment.

57.    At this time, Patrick was on FaceTime with his brother and attempted to show Plaintiff on the FaceTime camera, prompting Plaintiff to cover her face.

8

58. Patrick told his brother, "She is shy," to which his brother replied, "I like them shy."

59. Additionally, Patrick also attempted to take a photo with Andy, who declined, stating she did not want him to have a photo of her on his phone.

60. Despite this, Patrick secretly took the photo, causing Plaintiff and Andy to be concerned that Patrick was secretly taking photos of them without their consent while at work.

61. At the conclusion of a meeting that Plaintiff's supervisors had with Patrick, Jerica and Raymond were laughing and joking with Patrick, making it clear that Plaintiff's supervisors did not take Plaintiff's concerns seriously.

62. Moreover, Plaintiff learned that Defendant had supposedly merely issued Patrick a warning, in response to Plaintiff's numerous complaints that Patrick had been sexually harassing her and Andy.

63. Defendant otherwise entirely failed to take remedial action, in response to Plaintiff's complaints of the sexual harassment.

64. Further, following Plaintiff's complaints, Plaintiff began experiencing hostile treatment from her supervisors, in retaliation for having engaged in protected activity.

65.    Plaintiff attempted to contact Defendant's District Manager, Gabi, to escalate her complaints about Patrick and to complain about the retaliation that she was now experiencing, but she received no response.

66.    Plaintiff then asked her former manager, Dawn, to inform Gabi that Plaintiff needed to speak with her urgently.

67.    Despite Dawn's repeated follow-ups, Gabi failed to contact Plaintiff.

68.    Finally, with Defendant having taken no remedial action in response to Plaintiff's complaints and Defendant's District Manager failing to respond to Plaintiff's correspondence, Plaintiff's father had to intervene by contacting a manager at a different store, in an effort to report the situation to Gabi.

69.    However, still no remedial action was taken.

70.    Eventually, Dawn provided Plaintiff with Gabi's direct phone number.

71.    Plaintiff texted Gabi, requesting a meeting with Gabi at a store location that was not Plaintiff's store, and stating that Plaintiff was uncomfortable continuing to work with Patrick, who had been repeatedly sexually harassing Plaintiff and her coworker, Andy, for months.

72.    On or around February 26, 2026, Plaintiff sent Gabi a message, recounting the sexual harassment she had been experiencing, stating, in relevant part:

> [E]veryday me and Andy would be harassed by a 45 year old man patrick. He would tell me how he wanted to flip me all around and do

10

multiple sexual acts on me as well as saying how he'd put his mouth on our privates on me and my co-worker andy. He would then began to always come up to each of us saying "ur fine as hell" and demonstrating what he would do to us with his tongue, he works at whataburger as well and this 45 year old man patrick came into work after and said to Andy "iv'e been thinking of you all day so i brought you food" and he would say "you're exotic, you could get anything you want with those eyes". This would go on everyday with worse and worse words used by him. He then would start taking of what seemed like videos and would show us to his friends on facetimes as they would say preverted things out loud to me and Andy too including "you're fine" "you're beautiful" "i like them shy'" as well as confirmed pictures of us, Andy and I would preach to him and directly tell him to his face to stop and he would continue doing the things we told him to stop doing. Everyday coming to work was uncomfortable and sickening  knowing andy and i would have to work with him on our scheduled days, I would come home and not eat from feeling so disgusted from being harassed at work And no employee should have to move their days around or stop working because a job is allowing victims to work with perverts and bullies, when [P]atrick would say these things to us we would laugh from the uncomfortable-ness, but after a while of him saying things to us everyday, we would then start to tell him to stop, but he wouldn't. That same day is when i went to the bathroom and i was on the phone with my old manager Dawn, explaining what was happening and to tell Gabi (the district manager) that i urgently need to talk to her, i was in the bathroom for about 7 minutes or so on the phone in there, when i came out [A]ndy had told me patrick was working with her at the cash register area and andy jokingly said "[J]ayden must have got stuck" [P]atrick added in "she's probably touching herself" as he started to make hand movements demonstrating what he said. I began to start having panic attacks often after this situation started happening . . . . And no matter how many times we told Patrick no and to stop he kept the action's up with no punishments from this company and or management.

I then went to Miss J first explaining the situation of patricks actions towards me and Andy. And she said she'd take care of it. A few days went by and patrick was still talking to me and andy the same preverted way he always did, So i went to Raymond, Raymond told me he dosent tolerate it and that he would take care of it. A couple days went by and patrick came in still working the same schedule as me and Andy and

11

still saying disgusting things to us. Then the 19th i had left work at 6. As soon as [I] left is when [R]aymond and Jerica had pulled Andy upstairs by herself and began to ask her if their were any concerns she had with working here. Andy replied with "this is about [P]atrick right". Andy started explaining what was going on and after she explained the sickening acts [P]atrick was doing Jerica then began to stand there victim blaming us for the way Patrick's been acting miss jay said "if you and [J]ayden say stuff to each other and [P]atrick hears it, then he will think its okay for him to say it to so you guys have to start watching what you say to each other." Me and Andy have never said one sexual thing to each other in our life." Andy told me tha[t] Jerica Also added in that "you and Jayden need to drop it and stop talking about it, spring break season is coming up and i don't have time to deal with this, you guys are making it a bigger deal than what it is" Patrick would add in comments like "u are thick in all the right places" and things like "oh the things i'd do to you" but somehow we began to get victim blamed for it while [R]ay was speaking to Andy he was covering his mouth trying not to laugh. Andy then started pointing out our ages to show miss jay that this is not normal behavior and she then added "well i can't really do anything about that, my husband is 30 years younger than me". No one had asked about her personal life, that has nothing to do with the situation. All we asked was for something done about this, when i talked to Ray about this he told me not to tell anyone about this, same thing with [A]ndy he told her not to tell anyone about the situation and also told Andy not to tell me specifically. I went to both managers and neither of them asked if i was okay or for any more information, because they didn't care enough to [] take care of this matter. The next day i got a call from Andy she began to tell me how they took Patrick upstairs to talk about the situation. And when they came down stairs after addressing him 5 minutes later Jerica was working with him on shoes cracking jokes and laughing with him while after she began to give [A]ndy negative energy as if she did not like her as soon as they a[d]dressed the situation with [P]atrick, it ended up falling back on me and [A]ndy when we are the victims.

73.    Finally, Gabi agreed to meet Plaintiff the next day, so Plaintiff drove approximately 40 minutes to meet with Gabi, however, Gabi never showed up to the meeting and did not respond to Plaintiff's messages that day.

12

74. On the next day, Plaintiff followed up with Gabi, but still received no response for several days.

75. Again, Plaintiff's father had to intervene, due to Defendant's repeated failures to take any remedial action, or, at the bare minimum, even respond to Plaintiff.

76. It was only after Plaintiff's father threatened legal action in a call with Defendant's Human Resources Department ("HR"), that HR finally contacted Gabi.

77. Eventually, Gabi then called Plaintiff and informed Plaintiff that resolving the matter would require a lengthy investigation.

78. Plaintiff further engaged in protected activity by complaining to Gabi about the fact that Patrick was still working at Plaintiff's location, subjecting Andy to continued sexual harassment.

79. Gabi informed Plaintiff that Plaintiff would be transferred to another store—Gabi's primary office—which was located 45 minutes from Plaintiff's home.

80. Plaintiff was transferred to this further location in retaliation for having engaged in protected activity.

81. Despite Plaintiff being the victim of sexual harassment, Defendant did not take remedial action against the offender, Patrick.

82. Instead, Defendant transferred Plaintiff to a store that was forty-five (45) minutes away from her home.

13

83. Defendant showed preferential treatment to Patrick, who was similarly situated to Plaintiff, yet was male.

84. Further, Defendant did not take remedial action against the managers, Jerica and Raymond, who (i) failed to take remedial action and (ii) retaliated against Plaintiff.

85. Instead, Defendant transferred Plaintiff to a store that was forty-five (45) minutes away from her home.

86. Plaintiff was transferred on or around March 1, 2025, and was told by Gabi that her schedule would not change.

87. However, Plaintiff's hours were cut from 34 hours per week to 28 hours per week.

88. Plaintiff's hours were reduced in retaliation for having engaged in protected activity.

89. Further, at the new location, right away, Plaintiff experienced retaliatory conduct from her managers.

90. It was immediately clear that Plaintiff's new managers were closely monitoring her every move and were overtly critical of her.

91. This retaliatory scrutiny was so apparent that even Plaintiff's coworkers commented on how Plaintiff was being followed around the store and micromanaged.

14

92.    Plaintiff worked at the new location only on or around March 1 and 2, 2025, before she was forced to resign, due to the ongoing retaliation that she was experiencing from Defendant.

93.    Plaintiff texted Gabi to inform her of her resignation and the reasons behind it, but Gabi never responded.

94.    Plaintiff was subjected to sexual harassment, disparate treatment based on her sex, and retaliation, in violation of Title VII and the FCRA.

95.    Throughout Plaintiff's employment, it is clear that Defendant—despite its knowledge of the sexual harassment that Plaintiff was experiencing—completely and utterly failed to take prompt and effective remedial action.

## COUNT I – TITLE VII VIOLATION
### (SEX DISCRIMINATION)

96.    Plaintiff realleges and readopts the allegations of paragraphs 6 through 20, 22 through 24, 26 through 29, 31 through 38, 42 through 46, 48 through 71, 73 through 79, 81 through 87, 90, and 92 through 94 of this Complaint, as though fully set forth herein.

97.    Plaintiff is a member of a protected class under Title VII.

98.    Plaintiff was subjected to disparate treatment on the basis of sex, including her managers refusing to take remedial action against Plaintiff's male harasser, being transferred to a further store location, and being forced to resign.

99.    Defendant's actions were willful and done with malice.

15

100. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) An injunction restraining continued violation of Title VII by Defendant;

d) Compensation for lost wages, benefits, and other remuneration;

e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f) Any other compensatory damages, including emotional distress, allowable at law;

g) Punitive damages;

h) Prejudgment interest on all monetary recovery obtained.

i) All costs and attorney's fees incurred in prosecuting these claims; and

j) For such further relief as this Court deems just and equitable.

## COUNT II – TITLE VII VIOLATION
### (SEXUAL HARASSMENT)

101.   Plaintiff realleges and readopts the allegations of paragraphs 6 through 79, 81 through 82, 84 through 87, 90, and 92 through 95 of this Complaint, as though fully set forth herein.

102.   Plaintiff is a member of a protected class under Title VII based on her sex.

103.   Plaintiff was subjected to unwelcome harassment on the basis of sex, including continued, unwanted sexual comments, from a much older coworker.

104.   Defendant was aware of this sexual harassment, yet failed to take remedial action.

105.   The harassment suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Defendant, up to and including Plaintiff having to be transferred to a different store location and ultimately, being forced to resign.

106.   Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

107.   Defendant's actions were willful and done with malice.

108.   Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    An injunction restraining continued violation of Title VII by Defendant;

d)    Compensation for lost wages, benefits, and other remuneration;

e)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f)    Any other compensatory damages, including emotional distress, allowable at law;

g)    Punitive damages;

h)    Prejudgment interest on all monetary recovery obtained.

i)    All costs and attorney's fees incurred in prosecuting these claims; and

j)    For such further relief as this Court deems just and equitable.

## COUNT III – TITLE VII RETALIATION

109.   Plaintiff realleges and readopts the allegations of paragraphs 6 through 79, 81 through 82, and 84 through 94 of this Complaint, as though fully set forth herein.

110.   Plaintiff is a member of a protected class under Title VII.

111.   Plaintiff exercised or attempted to exercise her rights under Title VII, thereby engaging in protected activity under Title VII.

112.   Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by ignoring her numerous complaints, showing her hostile treatment, transferring her to a further location, reducing her hours, micromanaging her, and, ultimately, forcing her to resign, due to the ongoing retaliation.

113.   Defendant's actions were willful and done with malice.

114.   Defendant took material adverse action against Plaintiff.

115.   Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

   a)   A jury trial on all issues so triable;

   b)   That process issue and that this Court take jurisdiction over the case;

   c)   That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising her rights under Title VII;

   d)   That this Court enter an injunction restraining continued violation of Title VII by Defendant;

19

e)    Compensation for lost wages, benefits, and other remuneration;

f)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

g)    Front pay;

h)    Any other compensatory damages, including emotional distress, allowable at law;

i)    Punitive damages;

j)    Prejudgment interest on all monetary recovery obtained.

k)    All costs and attorney's fees incurred in prosecuting these claims; and

l)    For such further relief as this Court deems just and equitable.

## <u>COUNT IV – FCRA VIOLATION</u>
### (SEX DISCRIMINATION)

116.  Plaintiff realleges and readopts the allegations of paragraphs 6 through 20, 22 through 24, 26 through 29, 31 through 38, 42 through 46, 48 through 71, 73 through 79, 81 through 87, 90, and 92 through 94 of this Complaint, as though fully set forth herein.

117.  Plaintiff is a member of a protected class (sex) under the FCRA.

118.  Plaintiff was subjected to disparate treatment by Defendant on the basis of her sex, including her managers refusing to take remedial action against Plaintiff's

20

male harasser, being transferred to a further store location, and being forced to resign.

119. Defendant's actions were willful and done with malice.

120. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) Compensation for lost wages, benefits, and other remuneration;

d) Front pay;

e) Any other compensatory damages, including emotional distress, allowable at law;

f) Punitive damages;

g) Prejudgment interest on all monetary recovery obtained.

h) All costs and attorney's fees incurred in prosecuting these claims; and

i) For such further relief as this Court deems just and equitable.

## COUNT V – FCRA VIOLATION
### (SEXUAL HARASSMENT)

121.   Plaintiff realleges and readopts the allegations of paragraphs 6 through 79, 81 through 82, 84 through 87, 90, and 92 through 95 of this Complaint, as though fully set forth herein.

122.   Plaintiff is a member of a protected class under FCRA based on her sex.

123.   Plaintiff was subjected to unwelcome harassment on the basis of sex, including continued, unwanted sexual comments, from a much older coworker.

124.   Defendant was aware of this sexual harassment, yet failed to take remedial action.

125.   The harassment suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Defendant, up to and including Plaintiff having to be transferred to a different store location and ultimately, being forced to resign.

126.   Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

127.   Defendant's actions were willful and done with malice.

128.   Plaintiff was injured due to Defendant's violations of FCRA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

22

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) Compensation for lost wages, benefits, and other remuneration;

d) Front pay;

e) Any other compensatory damages, including emotional distress, allowable at law;

f) Punitive damages;

g) Prejudgment interest on all monetary recovery obtained.

h) All costs and attorney's fees incurred in prosecuting these claims; and

i) For such further relief as this Court deems just and equitable.

## COUNT VI – FCRA RETALIATION

129. Plaintiff realleges and readopts the allegations of paragraphs 6 through 79, 81 through 82, and 84 through 94 of this Complaint, as though fully set forth herein.

130. Plaintiff is a member of a protected class under the FCRA.

131. Plaintiff engaged in protected activity under the FCRA by opposing Defendant's discrimination and sexual harassment of Plaintiff.

23

132. Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by ignoring her numerous complaints, showing her hostile treatment, transferring her to a further location, reducing her hours, micromanaging her, and, ultimately, forcing her to resign, due to the ongoing retaliation.

133. Defendant's actions were willful and done with malice.

134. Defendant took material adverse action against Plaintiff.

135. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) That this Court enter a declaratory judgment, stating that Defendant interfered with Plaintiff's rights under the FCRA;

d) Compensation for lost wages, benefits, and other remuneration;

e) Reinstatement of Plaintiff to a position comparable to her prior position, with back pay plus interest, pension rights, and all benefits;

f) Front pay;

g) Any other compensatory damages, including emotional distress, allowable at law;

h) Punitive damages;

i) Prejudgment interest on all monetary recovery obtained.

j) All costs and attorney's fees incurred in prosecuting these claims; and

k) For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 18th day of March, 2026.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar No: 37061
**HANNAH E. DeBELLA**
Florida Bar No: 1026002
**Wenzel Fenton Cabassa P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Direct No.: 813-337-7992
Facsimile No.: 813-229-8712
Email: bhill@wfclaw.com
Email: hdebella@wfclaw.com
Email: aketelsen@wfclaw.com
Attorneys for Plaintiff